**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **HAUSSER + TAYLOR LLC** ) | **CASE NO.1:07CV2832** |
| ) | |
| Plaintiff, ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| Vs. ) | |
| ) | |
| **RSM MCGLADREY, INC.** ) | **ORDER** |
| ) | |
| Defendant. ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiff Hausser + Taylor LLC's Motion for Temporary Restraining Order (ECF #4). The Court held an in-chambers conference with attorneys representing both parties on September 20, 2007. After considering the motions, briefs, supporting materials and arguments of counsel, the Court denies Plaintiff's Motion for Temporary Restraining Order.

**FACTS**

The following are facts as alleged in Plaintiff's Motion for Temporary Restraining Order. Hausser + Taylor ("H+T") is an Ohio based accounting firm. RSM McGladrey ("RSM") is a national business and tax consulting firm and subsidiary of H & R Block. RSM is partnered with McGladrey & Pullen ("M&P"), a national accounting firm.

Accounting services are divided between attest services (auditing of financial statements and other accounting work requiring CPAs) and non-attest work (preparing tax returns and various consulting services). Attest services accounting firms may not be controlled or owned by non-accountants. H+T historically provided both attest and non-attest services. In January of

2000, H+T sold its non-attest practice to American Express Tax and Business Services, Inc. ("TBS"). As part of the sale, H+T and TBS entered into a Service Agreement and Separate Practice Agreement ("SPA"). Pursuant to the Agreements, H+T would remain independent of TBS for purposes of providing attest work but would purchase administrative and support services from TBS and would be entitled to lease TBS employees to assist H+T attest work. Both Agreements contain Minnesota choice of law clauses. The salient point of the Separate Practice Agreement was to preserve H+T's independence. Plaintiff contends the agreement never contemplated TBS would partner with another accounting firm to compete with H+T.

In 2005, TBS stock was sold to RSM, opening Ohio markets to RSM. RSM has nationally partnered with M&P. RSM never entered into a new agreement with H+T; it assumed the agreement between H+T and TBS. H+T and RSM attempted to negotiate the repurchase of the non-attest services sold to TBS and now owned by RSM. Those efforts, to date, have failed.

### TRO Allegations

H+T contends RSM is attempting to eliminate H+T as a competing accounting company and take H+T's clients for attest services. Plaintiff contends its clients are also at risk, as audit and other attest work may be disrupted or halted. Furthermore, Plaintiff argues public companies may be particularly affected due to the requirements of attest reports on financial statements.

Plaintiff contends there is injury beyond mere financial revenues. H+T is at risk of losing its members. RSM employees have been given a deadline of September 28, 2007 to accept offers of employment with M&P or be terminated from RSM. H+T members who are also RSM employees presumably face the same deadline. RSM, possibly using confidential H+T information, has begun soliciting H+T clients on behalf of M&P. RSM has terminated the

Separate Practices Agreement and Service Agreement with H+T on September 19, 2007. RSM has also made statements to its employees that H+T is subject to restrictive covenants in its agreement with RSM, preventing H+T from competing with RSM for one year after the termination of the contract.

Plaintiff alleges H+T is faced with the loss of its clients, leased personnel and its very ability to do business, and such harm is irreparable and imminent.

Plaintiff asks this Court to enjoin Defendant RSM from soliciting H + T clients and making false statements regarding H+T's ability to perform attest services for its clients pursuant to the SPA. In arguments in chambers, Plaintiff H+T requested an Order from the Court permitting it to continue attest services at least for thirty days. Plaintiff also requested Defendant RSM be prohibited from using confidential business information and M&P be prohibited from using H+T former members to solicit clients.

## Defendant's Arguments

Defendant contends the TRO is not warranted, as this is a garden variety contract dispute between sophisticated business entities and only presents financial consequences making it unsuitable for a TRO. RSM has termination rights under the parties' contracts and it merely exercised those rights. The parties are currently negotiating their financial separation and are engaging in contractually-mandated mediation. Further, if mediation fails, the parties are obligated to go to arbitration. The parties agree either party may seek equitable relief from the Court without first going to arbitration. However, Defendant contends the claims made by Plaintiff are not appropriate for equitable relief but are contract disputes expressly reserved for resolution by arbitration. Defendant contends the Separate Practice Agreement permits termination with or without cause at any time upon at least thirty days notice. RSM has given

notice to H+T it intends to terminate the Separate Practices Agreement. Nothing prevents RSM from entering into new separate practice agreements with other parties once the old one is terminated. Furthermore, Defendant contends paragraph 13 of the SPA which states, "(a) call upon any of the clients of American Express [i.e., TBS] for the purpose of soliciting or providing any Attest Services (except pursuant to this agreement); or (b) conclude any sale to the clients of American Express of any Attest Services (except pursuant to this Agreement)," expressly prohibits H+T from soliciting clients of the business purchased by TBS, and now owned by RMS, for the purpose of providing attest services to those clients either during the SPA or for twelve months after its termination.

## **Standard of Review**

Injunctive relief is an extraordinary remedy and is issued cautiously and sparingly. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-313 (1982).

Four factors must be considered when deciding whether to grant an injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether there is a threat of irreparable harm to the movant; (3) whether others will suffer substantial harm as a result of the injunction, should it issue; and (4) whether the public interest will be served by the injunction. *See Rock & Roll Hall of Fame and Museum, Inc. v. Gentile Prods*., 134 F. 3d 749, 753 (6th Cir. 1998); *Vittitow v. Upper Arlington*, 43 F. 3d 1100, 1109 (6th Cir. 1995) (the four factors are "not prerequisites to be met, but factors to be balanced."); *D.B. v. Lafon*, 2007 U.S. App. LEXIS 3886 (6th Cir. 2007). While no single factor will be determinative as to the appropriateness of the equitable relief sought, (*In re DeLorean Motor Co.*, 755 F. 2d 1223, 1229 (6th Cir. 1985)), " a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F. 3d 620, 625 (6th Cir. 2000).

The moving party must establish its case by clear and convincing evidence. *See Deck v. City of Toledo*, 29 F. Supp. 2d 431, 433 (N.D. Ohio 1998), *citing Garlock, Inc., v. United Seal, Inc.*, 404 F. 2d 256, 257 (6th Cir. 1968).

### **Analysis**

Although parties reserved the right to petition the Court for equitable relief, the Court finds Plaintiff's claims on the requested TRO are arguably contractual disputes properly put to an arbitrator in conjunction with the parties' express agreement. The Sixth Circuit has stated, "equity cannot intervene where there is an adequate remedy at law." *Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 104 (6th Cir. 1982).

Whether H+T is prohibited from continuing attest work under the non-solicitation clause found in paragraph 13 of the SPA, is a dispute over the terms of a contract which is expressly reserved for arbitration. What the parties rights are under the non-solicitation clause and its enforceability are also questions for the arbitrator and are not suitable for equitable determination. The Court finds the arbitration agreement provides an adequate remedy and does not require the extraordinary relief of a temporary restraining order. Allowing a third party to partner with RSM for attest services, although admittedly not contemplated by Plaintiff when entering the SPA, was also not expressly prohibited. Therefore, equitable relief in the form of a TRO is unwarranted where Plaintiff's own actions, i.e. agreeing to the language of the non-solicitation clause, created the opportunity for Defendant to pursue its present course of action, which Plaintiff requests this Court immediately halt. The dispute is one of contractual interpretation and does not support the issuance of the extraordinary relief afforded by a TRO when alternative and adequate remedies (i.e. contractually obligated mediation and arbitration) are present.

However, Plaintiff's allegations that a September 28, 2007, deadline was given by Defendants to RSM employees performing field services for H+T and presumably H+T members, (i.e. join us or lose your jobs), compel the Court to permit expedited discovery and allow Plaintiff the opportunity to present evidence warranting a preliminary injunction. The Court also finds equitable relief may be appropriate in preventing RSM employees from disseminating confidential information prohibited by agreement of the parties. The Court Orders parties to engage in expedited discovery on these two issues to be completed by 4:00 PM, Wednesday, September 26, 2007. The Court further Orders the parties to provide status reports at that time, informing the Court of any developments resulting from the expedited discovery. The parties may then file any appropriate motions.

For the foregoing reasons, the Court denies Plaintiff's Motion for Temporary Restraining Order, and Orders expedited discovery as set forth above.

IT IS SO ORDERED.


September 21, 2007            s/Christopher A. Boyko
Date                          CHRISTOPHER A. BOYKO
                              United States District Judge